IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**CARL GADBERRY**                                                                                                  **PLAINTIFF**

**V.**                                 **CASE NO. 4:21-CV-00427-LPR-ERE**

**COMMISSIONER of**
**SOCIAL SECURITY ADMINISTRATION**                                      **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to United States District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.     INTRODUCTION**

On May 8, 2019, Carl Gadberry applied for disability benefits. *Tr. at 15*. Mr. Gadberry originally alleged disability beginning on December 24, 2015, but he later amended his alleged onset date to February 15, 2017. *Id*. His claims were denied both initially and upon reconsideration. *Id*. After conducting a hearing on July 28,

1

2020, an Administrative Law Judge ("ALJ") denied Mr. Gadberry's application on September 22, 2020. *Tr. at 25*. Following the ALJ's order, Mr. Gadberry sought review from the Appeals Council, which denied his request for review. *Tr. at 1*. Mr. Gadberry seeks judicial review of the ALJ's decision, which now stands as the Commissioner's final decision.

For the reasons stated below, the Court should affirm the decision of the Commissioner.

## II.   THE COMMISSIONER'S DECISION

The ALJ found that Mr. Gadberry had not engaged in substantial gainful activity since the amended alleged onset date of February 15, 2017. *Tr. at 18*. At Step Two, the ALJ found that Mr. Gadberry had the following severe impairments: dysfunction of a major joint (right knee) and obesity. *Id*.

After finding Mr. Gadberry's impairments did not meet or equal a listed impairment, the ALJ determined that he had the residual functional capacity ("RFC") to perform sedentary work, except that he could only occasionally climb, balance, crawl, kneel, stoop, and/or crouch; and he must use a cane to ambulate. *Tr. at 20*.

Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Mr. Gadberry was unable to perform any of his past relevant work as a tile installer, construction worker, grounds caretaker, general production worker, poultry

eviscerator, or utility worker. *Tr. at 23-24.* The ALJ found that Mr. Gadberry's RFC would allow him to perform jobs that exist in significant numbers in the national economy, including call out operator, telephone information clerk, and document preparer. *Tr. at 24-25.* The ALJ concluded that Mr. Gadberry was not disabled. *Tr. at 25.*

### III. DISCUSSION

#### A. Standard of Review

In this appeal, the Court must review the Commissioner's decision for legal error and determine whether the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (citing *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "Substantial evidence" in this context means "enough that a reasonable mind would find [the evidence] adequate to support the ALJ's decision." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (citation omitted). In making this determination, the Court must consider not only evidence that supports the Commissioner's decision, but also evidence that supports a contrary outcome. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The Court will not reverse the Commissioner's decision, however, "merely because substantial evidence exists for the opposite decision." *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) (citation omitted).

### B. Mr. Gadberry's Arguments on Appeal

Mr. Gadberry argues that the ALJ's decision is not supported by substantial evidence. He argues that the ALJ erred by: (1) failing to fully develop the record; (2) determining that his mental impairments were not severe; (3) failing to incorporate all of his alleged limitations in the RFC determination; and (4) failing to consider whether he was entitled to a closed period of disability. After reviewing the record as a whole, the Court concludes that the ALJ did not err in denying benefits.

#### 1. Failure to Develop the Record

Although the claimant bears the burden of proving his or her disability, the ALJ bears a responsibility to fully and fairly develop the record in a social security case. *Combs v. Berryhill*, 878 F.3d 642, 646-47 (8th Cir. 2017). If the record does not contain enough evidence to determine the impact of a claimant's impairment on his ability to work, the ALJ's failure to obtain and consider more evidence may require reversal. *Byes v. Astrue*, 687 F.3d 913, 916 (8th Cir. 2012). Reversal is only warranted if the failure to develop the record is unfair or prejudicial. *Haley v. Massanari*, 258 F.3d 742, 750 (8th Cir. 2001).

Mr. Gadberry asserts the ALJ committed this error in multiple ways. First, he faults the ALJ for failing to order a mental source consultative evaluation ("MSCE") to determine the effects of his alleged mental impairments on his ability to function in the workplace. The medical record shows that Mr. Gadberry attended an initial

4

mental health evaluation in September 2019, where he was diagnosed with "Major Depressive Disorder, Single Episode, Moderate." *Tr. at 741*. Mr. Gadberry contends that, in the face of this diagnosis, the ALJ erred when determining that this impairment was non-severe.

An MSCE was not necessary in this case because substantial evidence supports the ALJ's decision. The medical evidence and other evidence in the record suggest Mr. Gadberry's mental impairments were not severe. Mr. Gadberry received minimal treatment for his mental impairments. After attending only an initial evaluation, he failed to follow up with his treatment and was discharged two months later. *Tr. at 739-40*. Moreover, Mr. Gadberry's depression did not appear to significantly interfere with his daily functioning. In his function report, Mr. Gadberry reported no issues with following instructions and stated that he could "pay attention for a good time." *Tr. at 205*. When asked how well he could get along with authority figures, he responded: "Really well. I'm a respectful person." *Tr. at 206*. He indicated that he attended Sunday dinners at church and had friends over about twice a month, and that he would attend school functions and sports events for his children. *Tr. at 204*. Mr. Gadberry did not report taking any medications to treat mental health symptoms, nor did he allege any functional limitations stemming from his depression. The lack of treatment history and reported symptoms support the ALJ's finding that his mental impairments were non-severe. See *Byes*, 687 F.3d at

916. Thus, the ALJ did not err in failing to obtain and consider further evidence regarding Mr. Gadberry's mental impairments.

Second, Mr. Gadberry argues the ALJ should have ordered a physical consultative evaluation regarding his orthopedic/musculoskeletal work restrictions because the ALJ rejected his treating source opinion evidence. However, there is no requirement that an RFC finding be supported by a specific medical opinion. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). There was sufficient medical evidence and other evidence in the record to allow the ALJ to make a disability determination regarding his physical impairments.

Third, Mr. Gadberry contends that the Appeals Council erred in not considering August 21, 2020 opinion evidence from Dr. Ronaldo Cheng, Mr. Gadberry's orthopedic surgeon. To the contrary, that the Appeals Council did consider the evidence and determined that it would not have affected the outcome of the ALJ's decision. *Tr. at 2*. It is not the task of this Court to evaluate the Appeals Council's decision to deny review, *Riley v. Shalala*, 18 F.3d 619, 622 (8th Cir. 1994), but the Court does include this newly-submitted evidence as part of the administrative record in determining whether the ALJ's decision was supported by substantial evidence on the record as a whole. *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

### 2.    Step Two

At Step Two of the disability evaluation process, the ALJ must determine whether a claimant's impairments are severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). An impairment is considered non-severe if the impairment "would have no more than a minimal effect on the claimant's ability to work." *Id*. It is the claimant's burden to establish that his impairment is severe. *Id*. To evaluate the severity of a claimant's mental impairments, the ALJ uses a "special technique" ("the PRT") to rate the degree of the claimant's limitations across four broad areas of mental functioning. *See* 20 C.F.R. § 404.1520a. The ALJ's written decision incorporates the relevant findings and conclusions based on the technique. *Id*. § 404.1520a(e)(4). The decision "must show the significant history, including examination and laboratory findings, and the functional limitations that were considered" in the analysis and "include a specific finding as to the degree of limitation in each of" the four functional areas. *Id*.

Mr. Gadberry contends that the ALJ's PRT findings lacked supporting medical evidence and were improperly based on Mr. Gadberry's own statements about his functional limitations. Assuming *arguendo* that the ALJ erred by failing to cite to the medical evidence, any such error was harmless. See *Cuthrell v. Astrue*, 702 F.3d 1114, 1118 (8th Cir. 2013) (failure to complete PRT may be harmless where there is no credible evidence of severe mental impairment). As discussed

7

above, substantial evidence in the record as a whole supports the ALJ's conclusion that Mr. Gadberry's depression did not significantly limit his ability to perform basic work activities. Any error the ALJ may have committed at Step Two does not warrant reversal.

### 3. RFC Determination

A claimant bears the burden of proving his RFC, which represents the most he can do despite the combined effects of his credible limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). "It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations." *Id*. Part of the RFC determination requires assessing a claimant's credibility regarding his subjective complaints. A claimant's credibility is primarily for the ALJ to decide, not the courts. *Id*. at 1218.

Mr. Gadberry argues the ALJ erred in evaluating the credibility of his subjective complaints because the ALJ did not properly consider the *Polaski* factors in his analysis. See *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984) (when evaluating subjective complaints, ALJ must consider medical evidence as well as evidence relating to claimant's daily activities; duration, frequency, and intensity of pain; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions). In evaluating credibility, an ALJ need not

discuss each *Polaski* factor as long as he recognizes and considers the *Polaski* analytical framework. *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). An ALJ can decline to credit a claimant's complaints if the evidence as a whole is inconsistent with the claimant's testimony. *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, we will defer to its judgment even if every factor is not discussed in depth." *Perkins v. Astrue*, 648 F.3d 892, 899 (8th Cir. 2011) (citation omitted).

Contrary to Mr. Gadberry's claims, the ALJ's evaluation appropriately considered the *Polaski* factors in determining that his complaints were not entirely consistent with the record. One of the most notable factors supporting the ALJ's decision was the inconsistency between Mr. Gadberry's complaints and his admitted activities. Clinical notes show that Mr. Gadberry sought treatment for chest pain that began after practicing baseball with his children one afternoon in April 2018. *Tr. at 313*. His treatment provider wrote: "He did say that he was batting and running and throwing them being very physically active yesterday." *Id*. Later that year, in December 2018, Mr. Gadberry sought treatment for knee pain after he fell while trying to load a lawnmower onto a truck. *Tr. at 483*. The ALJ reasonably concluded that, while Mr. Gadberry may not have performed these activities on a daily basis, his ability to engage in such activities during the relevant time period is inconsistent with his allegations of disabling pain and functional limitations. See *Halverson v.*

*Astrue*, 600 F.3d 922, 932 (8th Cir. 2010) ("We have held that acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.") (citation omitted).

Mr. Gadberry's treatment history also properly factored into the ALJ's analysis. In January 2018, Mr. Gadberry's treating surgeon referred him to physical therapy for his pain and recommended a follow-up appointment "in a couple of weeks." *Tr. at 358.* Mr. Gadberry was discharged from physical therapy a month later for his failure to return for treatment, and there is no record that he attended a follow-up appointment with his surgeon. *Tr. at 552.* See *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility."). In fact, there is no indication in the record that Mr. Gadberry sought treatment for his right knee pain again until late December 2018, – nearly a year later – when he was "loading a lawnmower on a truck, when it fell back," and he "jumped back, avoiding the lawnmower" and re-injured his knee in the process. *Tr. at 483.* See *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (failure to seek medical treatment for alleged pain for long periods of time contradicts subjective complaints of disabling pain). Similarly, Mr. Gadberry never sought mental health treatment before September 2019, and then never returned for counseling following an initial evaluation, resulting in his discharge from treatment. *Tr. at 740-42.* This treatment history supports the ALJ's decision.

The ALJ also noted that none of Mr. Gadberry's treating providers recommended any long-term activity restrictions, which is inconsistent with the severity of pain and limitation alleged. Indeed, on multiple occasions during the relevant period, Mr. Gadberry's treatment providers encouraged him to engage in physical exercise. *Tr. at 349, 607*. See *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) ("A lack of functional restrictions on the claimant's activities is inconsistent with a disability claim where, as here, the claimant's treating physicians are recommending increased physical exercise."). In sum, multiple factors supported the ALJ's credibility determination.

The ALJ also properly considered the medical opinions from treating and consulting physicians in determining the RFC. Mr. Gadberry faults the ALJ for not giving weight to his treating surgeon's recommendation to elevate his right knee as needed for swelling, but the ALJ did not err in failing to include a limitation for unscheduled rest periods to accommodate this recommendation. The ALJ considered the doctor's note and incorporated the limitations he found to be credible in light of all the record evidence, including the use of a cane to ambulate. The ALJ was not required to credit Mr. Gadberry's testimony that he needed to elevate his leg several times a day for several hours at a time. See *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (RFC may be influenced by a determination that claimant's

allegations were not credible). Mr. Gadberry has not established that he is entitled to additional limitations beyond those already included in the RFC.

The medical source statement submitted to the Appeals Council does not undermine the ALJ's conclusion. Dr. Cheng's checkbox RFC assessment cites to minimal evidence in support of the recommended limitations and is thus entitled to little weight. See *Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (checkbox assessments citing no medical evidence and providing little to no elaboration possess little evidentiary value). Moreover, Dr. Cheng's recommendations are inconsistent with his own treatment notes, which show improvement after surgery. *Tr. at 347, 349.* Notably, Dr. Cheng wrote Mr. Gadberry a note to return to work in November 2017 with only a lifting restriction, after finding "good range of motion of the right knee," with minimal, tolerable pain. *Tr. at 350.* See *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012) (medical source statement may be discounted when limitations do not exist in physician's treating notes). The assessment is also inconsistent with other substantial evidence in the record, including medical opinion evidence from two consulting physicians, Mr. Gadberry's treatment history, and Mr. Gadberry's statements to his treatment providers regarding his activities, all of which indicate his limitations and pain were not severe enough to preclude all work activity.

In sum, the ALJ's RFC is supported by substantial evidence in the record. The ALJ captured all of Mr. Gadberry's credible limitations in the hypothetical he posed to the VE and could properly rely on the VE's testimony that Mr. Gadberry could adjust to other work in the national economy. See *Page v. Astrue*, 484 F.3d 1040, 1045 (8th Cir. 2007) (VE testimony based on properly phrased hypothetical constitutes substantial evidence supporting decision to deny benefits).

### 4. Closed Period of Disability

Mr. Gadberry lastly argues that the ALJ failed to consider a closed period of disability based on the five surgeries he had on his right knee during 2017. The Commissioner may award benefits either on a continuing basis or, where a once-disabling condition later ceases to be disabling, for a "closed period" of time. *Harris v. Sec'y of Dep't of Health and Human Servs.*, 959 F.2d 723, 724 (8th Cir. 1992). If evidence presented shows a claimant was unable to work for at least twelve months due to his disabling condition, he may be eligible for benefits for that time period. *See* 42 U.S.C. § 423(d)(1)(A); *Karlix v. Barnhart*, 457 F.3d 742, 747 (8th Cir. 2006) (disabling condition must meet durational requirement of twelve months to qualify).

Because the ALJ properly determined that Mr. Gadberry was not disabled at any time during the relevant period, the ALJ did not err in failing to consider a closed period of disability. The evidence upon which Mr. Gadberry relies does not indicate his impairments were disabling for at least twelve months during the relevant period

and then ceased to be disabling, such as would have suggested entitlement to a closed period of disability. Thus, the lack of a specific discussion of a closed period of disability in the ALJ's decision does not warrant remand.

## IV. CONCLUSION

The ALJ applied proper legal standards in evaluating Mr. Gadberry's claims, and substantial evidence supports the decision to deny benefits. The Court should affirm the decision and enter judgment in favor of the Defendant.

IT IS SO ORDERED this 21st day of April, 2022.

_____
UNITED STATES MAGISTRATE JUDGE